UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELESIO ANTONIO, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>            -v-<br><br><br>SIPSAK INC. (D/B/A SIP SAK) and MELISSA YEGEN,<br><br>                                        Defendants. | CIVIL ACTION NO.: 21 Civ. 1871 (LGS) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LORNA G. SCHOFIELD**, United States District Judge:

## I. INTRODUCTION

On March 3, 2021, Plaintiff Melesio Antonio ("Antonio") filed this putative collective action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL") §§ 190 et seq. and 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 et seq. ("WTPA"), seeking payment of unpaid wages and related relief against Defendants SipSak Inc. ("SipSak") and Melissa Yegen ("Yegen," with SipSak, "Defendants"). (ECF Nos. 1 (the "Complaint"); see ECF No. 18 (the "FAC")). Antonio alleges that during his employment at Defendants' Turkish restaurant, SipSak, located at 928 Second Avenue in New York City (the "Restaurant"), Defendants failed to pay him proper minimum, overtime, and spread-of-hours wages, improperly deducted a tip credit, and failed to keep adequate records of his hours worked. (ECF No. 18 ¶¶ 4–15). Defendants initially appeared and defended against Antonio's claims, but after their counsel withdrew and they failed to respond to the Court's orders, the Clerk of Court entered certificates of default against them and Antonio moved by order to show

1

cause for entry of default judgment. (ECF Nos. 19; 20; 30; 31; 46; 47; 48–50; 51). On November 18, 2021, the Honorable Lorna G. Schofield ordered that default judgment be entered in Antonio's favor against Defendants, and referred the matter for an inquest on damages. (ECF Nos. 57; 58 (the "Default Judgment")).

For the following reasons, the Court respectfully recommends that Antonio be awarded:

(1) $392,989.00 in damages against Defendants, comprised of: (i) $177,907.50 in unpaid overtime wages; (ii) $13,587.00 in spread-of-hours damages (iii) $191,494.50 in liquidated damages; and (iv) $10,000.00 in statutory damages;

(2) $59,803.73 in pre-judgment interest;

(3) post-judgment interest pursuant to 28 U.S.C. § 1961;

(4) attorneys' fees in the amount of $4,330.00; and

(5) costs in the amount of $402.00.

## II. BACKGROUND

### A. Factual Background

Unless otherwise indicated, the Court draws the facts from the FAC and the Damages Submission (see § II.B infra). (ECF Nos. 18; 49; 49-5). Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the FAC, except as to damages. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).

Defendants operate the Restaurant, where Antonio worked as a dishwasher, delivery worker, and kitchen aid from November 5, 2015 until December 12, 2020.  (ECF Nos. 18 ¶¶ 2, 4, 20; 49-5 ¶¶ 3–4, 7–8).  Defendants had the power to hire and fire Antonio, control his terms and conditions of employment, and determine the rate and method of his compensation.  (ECF Nos. 18 ¶ 32; 49-5 ¶ 5).  Defendants were engaged in interstate commerce; for example, "numerous items that were used in the restaurant on a daily basis [were] goods produced outside the State of New York[,]" (ECF No. 18 ¶ 34), and Antonio handled goods that had traveled in interstate commerce.  (ECF No. 49-5 ¶ 11).  In each year of Antonio's employment, Defendants had gross annual sales greater than $500,000.00.  (ECF No. 18 ¶ 33).

Although he was hired as delivery worker, Antonio spent over 20% of each day performing non-tipped duties, such as dishwashing, cleaning the kitchen, and helping the cook.  (ECF Nos. 18 ¶¶ 5; 35; 49-5 ¶¶ 8–9).  Throughout his employment, Antonio regularly worked more than 40 hours per week.  (ECF Nos. 18 ¶ 43; 49-5 ¶ 12).  From November 5, 2015 until November 2016, he worked from 11:00 a.m. until 11:00 p.m., six days per week, for a total of 72 hours per week.  (ECF Nos. 18 ¶ 44; 49-5 ¶ 13).  From November 2016 until November 2018, he worked from 10:00 a.m. until 10:00 p.m., six days per week, for a total of 72 hours per week.  (ECF Nos. 18 ¶ 45; 49-5 ¶ 14).  From November 2018 until May 2019, he worked from 2:00 p.m. until 11:00 p.m., six days per week, for a total of 54 hours per week.  (ECF Nos. 18 ¶ 46; 49-5 ¶ 15).  From May 2019 until March 2020, he worked from 11:00 a.m. until 11:00 p.m., six days per week, for a total of 72 hours per week.  (ECF Nos. 18 ¶ 47; 49-5 ¶ 16).  From May 2020[1] until

---

[1] The Court notes that there is an unexplained gap of one month, April 2020, in Antonio's employment at the Restaurant.  (Compare ECF Nos. 18 ¶ 47 & 49-5 ¶ 16 (stating hours worked until March 2020) with

December 12, 2020, he worked from 1:00 p.m. until 9:00 p.m., three days per week, and from 1:00 p.m. until 10:00 p.m., three days per week, for a total of 51 hours per week. (ECF Nos. 18 ¶ 48; 49-5 ¶ 17).

Defendants paid Antonio his wages by check. (ECF Nos. 18 ¶ 49; 49-5 ¶ 18). Defendants paid Antonio wages in the following amounts: from November 2015 until October 2018, $100 per day; from November 2018 until July 2019, $700 per week; from July 2019 until March 2020, $150 per day; and from May 2020 until December 12, 2020, $100 per day. (ECF Nos. 18 ¶¶ 50–53; 49-5 ¶¶ 19–22). Defendants did not pay Antonio a higher rate for hours worked over 40 hours per week. (ECF Nos. 18 ¶ 54; 49-5 ¶¶ 23–24). Defendants also interrupted Antonio's 30-minute meal breaks with demands that he return to work. (ECF Nos. 18 ¶ 56; 49-5 ¶ 25). Defendants did not give Antonio notice that they were taking as much as half of his tips or including tips as an offset against his wages. (ECF Nos. 18 ¶¶ 57–59; 49-5 ¶¶ 26–27). Defendants did not require Antonio to record his time, nor did they use any time tracking device for employees. (ECF Nos. 18 ¶ 60; 49-5 ¶ 28).

Defendants forced Antonio to sign documents containing false statements, including a document falsely stating that he had received $7,000 from Defendants due to the pandemic, and a document falsely stating the number of hours he worked per week. (ECF Nos. 18 ¶¶ 61–62; 49-5 ¶¶ 29–30). Defendants took other improper deductions from his wages, including for a food order that he had not completely delivered. (ECF Nos. 18 ¶ 63; 49-5 ¶ 31).

---

ECF Nos. 18 ¶ 48 & 49-5 ¶ 17 (stating hours worked from May 2020). Antonio does not request, and the Court does not recommend awarding, any damages for April 2020.

Defendants did not provide Antonio with any accurate wage statements, and, in fact, adjusted his paystubs to reflect inaccurate hours and wages.  (ECF Nos. 18 ¶¶ 65, 66, 90; 49-5 ¶¶ 33, 35, 36).  Defendants did not provide Antonio any notice, posted or otherwise, in English or in Spanish (Antonio's primary language), regarding minimum and overtime wages under the FLSA and NYLL.  (ECF Nos. 18 ¶¶ 67, 91; 49-5 ¶¶ 34, 37).

**B.  Procedural Background**

On March 3, 2021, Antonio filed the Complaint naming as Defendants Yegen and Bilge Inc. ("Bilge").  (ECF No. 1).  On March 5, 2021, Antonio served the Summons and Complaint on Yegen and Bilge.  (ECF Nos. 8; 10).  On May 5, 2021, Antonio filed the FAC, substituting SipSak for Bilge.  (ECF No. 18; see ECF No. 49 ¶ 8).  On May 25, 2021, Defendants filed answers to the FAC. (ECF Nos. 19; 20).

On August 4, 2021, Defendants' counsel, Vincent E. Bauer, Esq. ("Bauer"), notified the Court that Defendants had terminated his representation.  (ECF No. 23).  By Order dated August 5, 2021, Judge Schofield notified SipSak that, by September 5, 2021, it must obtain representation through a licensed attorney to appear in this case, and that the failure to do so might constitute grounds for entry of default judgment, and ordered Bauer to provide a copy of the Order to Defendants and file an application to withdraw.  (ECF No. 24 (the "Aug. 5 Order")). Bauer confirmed that he provided the Aug. 5 Order to Defendants, and filed a motion to withdraw.  (ECF Nos. 27; 29).  On August 25, 2021, Judge Schofield terminated Bauer's representation and directed the Clerk of the Court to send her Order to Defendants.  (ECF No. 30; ECF min. entry Aug. 26, 2021).  On September 8, 2021, Judge Schofield, noting that no counsel had appeared for SipSak as required by the Aug. 5. Order, directed Yegen to file by September

17, 2021 a letter stating whether she intended to defend this action. (ECF No. 31 (the "Sept. 8 Order"); see ECF min. entry Sept. 9, 2021). After Yegen did not respond to the Sept. 8 Order, Judge Schofield directed Antonio to move by order to show cause for entry of default judgment. (ECF Nos. 35; 40).

On October 29, 2021, the Clerk of the Court entered Certificates of Default against both Defendants, (ECF Nos. 46; 47), and the same day, Antonio moved by order to show cause for entry of default judgment (ECF No. 48 (the "Motion"), accompanied by the declaration of his counsel and exhibits (ECF No. 49 ("Sojo Declaration")), his own declaration (ECF No. 49-5 (the "Antonio Declaration")), a damages calculation (ECF No. 49-6 (the "Calculation")), and attorney billing records (ECF No. 49-7 (the "Fee Submission"), with the Sojo Declaration, the Antonio Declaration, and the Calculation, the "Damages Submission")). On November 1, 2021, Judge Schofield issued the order to show cause (the "OTSC"), which directed Defendants to appear by telephone on November 18, 2021 (the "OTSC Hearing"), Antonio to serve the OTSC and the Damages Submission on Defendants and file proof of service, and Defendants to respond to the OTSC and Damages Submission by November 12, 2021, and warned Defendants that failure to respond to the OTSC may be grounds for entry of default judgment against them. (ECF No. 51; see ECF No. 52 (proof of service)).

On November 18, 2021, after Defendants failed to appear at the OTSC Hearing, Judge Schofield entered the Default Judgment against Defendants and referred the matter for this inquest on damages. (ECF Nos. 57; 58). On November 19, 2021, the Court ordered Defendants to respond to Antonio's Damages Submission by December 17, 2021, and warned that the failure to respond or contact the Court to request an in-person hearing would result in the Court issuing

a report and recommendation based on the Damages Submission alone without an in-court hearing.  (ECF No. 59 (the "Scheduling Order")).  Antonio filed proof of service of the Scheduling Order on Defendants.  (ECF No. 60).  To date, Defendants have not responded to the Damages Submission or otherwise contacted the Court.

### III. DISCUSSION

#### A. Legal Standards

##### 1. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015); Fed. R. Civ. P. 55.  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing Enron, 10 F.3d at 96).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v.

Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted).

### 2.  Determining Liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015).  The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law."  Id.  If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief."  Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply

the missing information." Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### 3. Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (citation omitted), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

When the employer's payroll records are inaccurate or incomplete, "an employee has carried out his [or her] burden if he [or she] proves" enough for the court to make a "inference"

that he or she "has in fact performed work for which he [or she] was improperly compensated and if he [or she] produces sufficient evidence to show the amount and extent of that work[.]" Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citation omitted). The Court may credit a plaintiff's "recollections regarding [her] hours and pay in conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended Mar. 29, 2018. The Court "must ensure that [her] approximations and estimates are reasonable and appropriate." Id. Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

### B. Default Judgment

In accordance with the two-step process in Rule 55, the Clerk of the Court entered certificates of default as to both Defendants, and Judge Schofield entered the Default Judgment. (ECF Nos. 46; 47; 58). The Court's analysis of the relevant factors set forth above reveals first that the Court can infer, from Defendants' failure to submit any written reply to Antonio's Damages Submission after having been properly served, that their default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL

4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might prejudice Antonio.  See Inga v. Nesama Food Corp., No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), adopted by, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).  Third, despite initially answering the FAC, Defendants have failed to respond to the Court's orders or continue to appear and defend in this action.  Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in Antonio's favor, the Court finds that entry of default judgment is proper in this case.

## C.  Liability

### 1.  Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action.  Antonio sues under a federal statute—the FLSA—that gives rise to the Court's subject matter jurisdiction under 28 U.S.C. § 1331.  The Court may exercise supplemental jurisdiction over his NYLL claims because they arise out of the same facts and circumstances as his FLSA claims.  See Perez, 2019 WL 7403983, at *5.

The Court also has personal jurisdiction over Defendants, which is "a necessary prerequisite to entry of a default judgment."  Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (citation omitted), adopted by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).  The Court has personal jurisdiction over SipSak, which is a

New York corporation that maintains its principal place of business—the Restaurant—in New York City. (ECF No. 18 ¶¶ 22–23). The Court also has personal jurisdiction over Yegen, who was an owner, officer, or agent of SipkSak and possessed operational control over SipSak. (ECF No. 18 ¶¶ 24, 26). Antonio properly served both Defendants. (ECF Nos. 8; 10; 18). See Fed. R. Civ. P. 5(b)(2)(E).

Venue is proper because the Restaurant, where Antonio worked, is in this District, see 28 U.S.C. § 1391(b)(1), and because the events or omissions giving rise to his claims occurred in this District. See 28 U.S.C. § 1391(b)(2). (ECF No. 18 ¶¶ 1–2, 22).

### 2. **Statute of Limitations**

Under the NYLL, the statute of limitations is six years. See NYLL § 198(3). Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years. See 29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988). An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." McLaughlin, 486 U.S. at 133. Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief. Ni v. Bat-Yam Food Servs. Inc., No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Antonio worked at Defendants' Restaurant from November 5, 2015 until December 12, 2020, and filed the Complaint on March 3, 2021. (ECF Nos. 1; 49-5 ¶ 7). Thus, Antonio's employment period is entirely within the NYLL's six-year statute of limitations, but less

than half would be covered by the FLSA's two-year statute of limitations.[2]  Because the NYLL provides for equal or greater relief than the FLSA, the Court recommends awarding Antonio damages under the NYLL.  See Schalaudek v. Chateau 20th St. LLC, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *5 (S.D.N.Y. Feb. 24, 2017); Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *9 (S.D.N.Y. Jan. 10, 2022), adopted by, 2022 WL 1751163 (May 31, 2022).

### 3. FLSA and NYLL Elements

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages.  See Tackie v. Keff Enter., Inc., No. 14 Civ.

---

[2] Approximately half of Antonio's employment would be covered by FLSA's three-year statute of limitations for willful violations.  To support his contention that Defendants' conduct was willful, Antonio alleged in the FAC that "Defendants intentionally, willfully, and repeatedly harmed [] Antonio who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL[,]" which "included depriving delivery workers of a portion of the tips earned during the course of employment." (ECF No. 18 ¶ 82; see id. ¶¶ 85 (alleging that "Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL"); 89 (alleging that Defendants' conduct "was intentional, willful, [and] in bad faith")).  In Whiteside v. Hover-Davis, Inc., the Second Circuit held that "a plaintiff at the pleadings stage must allege facts that give rise to a plausible inference of willfulness for the three-year exception to the FLSA's general two-year statute of limitations to apply." 995 F.3d 315, 320 (2d Cir. 2021). "The Whiteside Court did not address what impact, if any, its ruling would have when a defendant defaults and willfulness is therefore inferred as a matter of law assuming it has been pled." Baez v. RCO Restoration Corp., No. 20 Civ. 1066 (VSB) (JLC), 2021 WL 1847379, at *2 (S.D.N.Y. May 10, 2021), adopted by, 2021 WL 4077944 (S.D.N.Y. Sept. 8, 2021); see Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (finding that, "[b]ecause the defendant defaulted and the complaint alleges that all of the violations were undertaken 'knowingly, intentionally and willfully,' the plaintiffs [were] entitled to a finding that the defendant's conduct was willful, and the three year statute of limitations will apply"), adopted by, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Because Antonio is "being awarded damages under New York Labor Law, which has a six-year statute of limitations, this issue need not be further considered in this case." Baez, 2021 WL 1847379, at *2; see Wen v. Hair Party 24 Hours Inc., No. 15 Civ. 10186 (ER) (DF), 2021 WL 3375615, at *15 (S.D.N.Y. May 17, 2021) ("The NYLL, however, with its six-year statute of limitations, would cover the entire period of Plaintiff's employment, without the Court's needing to reach the question of whether Plaintiff has adequately pleaded 'willfulness' under the FLSA, so as to be able to take advantage of the 'willfulness' exception to the statute's two-year limitations period."), adopted by, 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales."  Id. at *2 n.2.  To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).  To recover spread-of-hours pay, he must also allege that she worked "more than ten hours per day . . . and [was] not paid an additional hour at the minimum wage rate for days in which [she] worked [ten] or more hours."  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 123 (E.D.N.Y 2011).

### a.  The employment relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts afford the term employer "an expansive definition with 'striking breadth.'"  Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019), adopted by, 2019 WL 2544666 (S.D.N.Y. June 20, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)).  Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'"  Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Antonio's employer for FLSA purposes, the Court must examine the "economic reality" of the working relationship.  Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013).  Courts in the Second Circuit consider four non-exclusive factors to

assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3),[3] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) ("Hart I")). In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart I, 967 F. Supp. 2d at 924 (internal citation omitted). "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin, 273 F. Supp. 3d at 422.

---

[3] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

Antonio alleges that Defendants employed him as a dishwasher, delivery worker, and kitchen aid at the Restaurant. (ECF No. 18 ¶¶ 4–5). Antonio alleges that Yegen was an owner, manager, principal, or agent of SipSak, and that she "determine[d] the wages and compensation of the employees of Defendants, including [] Antonio, establishe[d] the schedules of the employees, maintain[ed] employee records, and ha[d] the authority to hire and fire employees." (ECF No. 18 ¶¶ 3, 24; see also id. ¶¶ 26–30).

By their default, Defendants have admitted their status as Antonio's employer. See Suriel, 2022 WL 1750232, at *11; Rovio Entm't, 97 F. Supp. 3d at 545. Because Defendants were Antonio's employer, they are jointly and severally liable under the FLSA and NYLL for any damages award. See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL).

## b.  Interstate commerce

Under the FLSA, Antonio must establish that he or his employer was engaged in interstate commerce. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (stating that employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed"); 29 U.S.C. § 203(s)(1)(A) (defining "Enterprise engaged in commerce").

Antonio has plausibly alleged that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside of the State of New York[,]" and that Defendants "were engaged in commerce or in an industry or activity affecting commerce." (ECF No. 18 ¶¶ 41, 97; see id. ¶ 34 ("numerous items that were used in the restaurant on a daily basis [were] goods produced outside the State of New York[,]").  Antonio has also alleged that, in each year of his employment, Defendants "had a gross annual volume of sales of not less than $500,000 . . . ."  (Id. ¶ 33).  In addition, the Restaurant is located in New York City (id. ¶ 2), and "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)); see also Fermin, 93 F. Supp. 3d at 33 ("[I]t [is] reasonable to infer that the myriad goods necessary to operate a []restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State."). Accordingly, Antonio's allegations meet the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and he has satisfied the interstate commerce element for FLSA liability. See Suriel, 2022 WL 1750232, at *11; Mondragon, 2019 WL 2251536, at *9.

### c.  Unpaid minimum wages

The FLSA and NYLL require employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week ("Straight Time Wages").  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, see 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage.  See 29 U.S.C. § 218(a).  "[I]n the absence of

rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) ("Hart II") (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)). A meal break is "bona fide" when the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). Where the plaintiff "asserts that [she] did not receive any meal or rest breaks[,]" "all of [her] time worked [will be] compensable." Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, No. 16 Civ. 8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

The NYLL requires certain employers to provide: (1) a meal period of at least thirty minutes for employees who work a shift of more than six hours over the time period encompassing 11:00 a.m. to 2:00 p.m., within that period; (2) an additional twenty-minute meal period between 5:00 pm and 7:00 p.m. for employees whose shift started before 11:00 a.m. and continued later than 7:00 p.m.; and/or (3) a forty-five minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six (6) hours and starts between 1:00 pm and 6:00 a.m. See NYLL § 162(2)–(4).

Antonio alleges that Defendants "constantly interrupted [his 30-minute] meal breaks by requiring [him] to get back to work." (ECF No. 49-5 ¶ 25; see ECF No. 18 ¶ 56). Accordingly, "all of [his] time worked [will be] compensable." Villanueva, 500 F. Supp. 3d at 235.

Employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage.  See 29 U.S.C. § 203(m)(2); 12 N.Y.C.R.R. § 146-1.3(b); Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).  "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites."  Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes."  Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).  The employer bears the burden of proving that this notice was given.  See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage under certain conditions.  See NYLL § 652(4).  "An employer may receive the benefit of this tip credit only if the employer provides 'to each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage' and 'maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage.'"  Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)); see 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  See Reyes v. Café Cousina Rest. Inc., 2019 WL 5722475, at *5; Salinas

v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

The Court finds that Defendants do not meet the requirements for taking a tip credit. Antonio alleges, and Defendants have admitted by their default, that Defendants never notified him that his tips were included as an offset to his wages, nor did they account for tips in any daily or weekly accounting of his wages.  (ECF Nos. 18 ¶¶ 57–58; 49-5 ¶¶ 26–27).  Because Defendants failed to meet the notice requirements of the FLSA and the NYLL, they are therefore not entitled to any tip credit against the minimum wage.  See Agureyev v. H.K. Second Ave. Rest., Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021); Schalaudek, 2017 WL 729544, at *6–7.

"Because Defendants are not entitled to any tip credit, [they] were required to pay [Antonio] full minimum wage, rather than the lower minimum wage for tipped workers."  Lopez v. Emerald Staffing Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *9 (S.D.N.Y. Feb. 26, 2020) (citing Cao, 2010 WL 4159391, at *2).  As an initial matter, however, Antonio makes one assumption that underlies, and causes error in, his Calculation: he appears to have assumed that the minimum wage rage for "large employers" in New York City applies to Defendants, even though neither the FAC nor the Declarations in this case allege that Defendants employed eleven or more people at the Restaurant, such that they would qualify as a "large employer" for minimum wage purposes.  See N.Y. Lab. L. 652(1)(a)(i).  (See ECF Nos. 49 ¶ 71 (listing minimum wage rates for large employers in New York City post-December 31, 2016; 49-6 at 1 (same)).  Given the lack of support for Antonio's assumption, the Court, where applicable, applies the minimum-wage rate for small employers as set forth in NYLL § 652(1)(a)(ii).  See Campos Marin

v. J&B 693 Corp., No. 19 Civ. 00569 (JGK) (KHP), 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022)

(applying lower, small employer rate where plaintiff failed to allege employer had eleven or more

employees); Reyes v. Lincoln Deli Groc. Corp., No. 17 Civ. 2732 (KBF), 2018 WL 2722455, at *7

(S.D.N.Y. June 5, 2018) (same).   The Court's use of the lower minimum wage impacts its

determination of whether Defendants are liable for minimum and overtime wage violations, and

the calculation of damages, discussed further below.

Although Antonio's FAC and Damages Submission broadly contend that Defendants failed

to pay him the applicable hourly minimum wage, he does not precisely articulate during which

periods he was paid less than the minimum wage.  (ECF Nos. 49 ¶ 74; 49-5 ¶ 38).  To the contrary,

Antonio's own Calculation indicates that his regular hourly pay rate was at or above the statutory

minimum wage rate even for large employers.  (ECF No. 49-6 at 1 (reflecting regular hourly pay

rates of $15 to $22.50)).  Only through the Court's review of the Calculation and performance of

its own damages calculation, is it possible to discern whether Defendants paid Antonio less than

the required minimum wage.  Based on the information in the FAC, the Calculation, and to which

Antonio has sworn in his Declaration, throughout his employment, the Court finds that he was

paid at or above the applicable minimum wage, and, accordingly, is not entitled to recover any

Straight Time Wages:

| Time Period | Antonio's Weekly Pay | Antonio's Hourly Rate (Weekly Pay/40) | Statutory Minimum Wage |
|---|---|---|---|
| 11/5/2015–12/31/2015 | $600 | $15 | $8.75 |
| 1/1/2016–11/15/2016 | $600 | $15 | $9.00 |
| 11/16/2016–12/31/2016 | $600 | $15 | $9.00 |
| 1/1/2017–12/31/2017 | $600 | $15 | $10.50 |

| 1/1/2018–10/31/2018 | $600 | $15 | $12.00 |
| 11/1/2018–11/15/2018 | $700 | $17.50 | $12.00 |
| 11/16/2018–12/31/2018 | $700 | $17.50 | $12.00 |
| 1/1/2019–5/15/2019 | $700 | $17.50 | $13.50 |
| 5/16/2019–7/15/2019 | $700 | $17.50 | $13.50 |
| 7/16/2019–12/31/2019 | $900 | $22.50 | $13.50 |
| 1/1/2020–3/30/2020 | $900 | $22.50 | $15.00 |
| 5/1/2020–12/12/2020 | $600 | $15.00 | $15.00 |

(ECF Nos. 18 ¶¶ 50–53; 49-5 ¶¶ 19-22).  Accordingly, the Court finds that Defendants are not liable for any Straight Time Wages.

### d.  Unpaid overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  To state an overtime claim, a plaintiff "must allege only that [he] worked compensable overtime in a workweek longer than forty hours, and that [he] was not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3.

Antonio alleges that he regularly worked more than 40 hours per week, as much as 72 hours per week.  (ECF Nos. 18 ¶¶ 44–48; 49-5 ¶¶ 12–17).  He alleges that Defendants failed to pay him an overtime premium for the hours he worked over 40 hours per week.  (ECF No. 18 ¶¶ 6, 14; 49-5 ¶¶ 23-24).  Thus, Antonio has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.  See Suriel, 2022 WL 1750232, at *13 (holding that

plaintiff stated claim for overtime wages); Agureyev, 2021 WL 847977, at *7 (same); Mondragon, 2019 WL 2551536, at *9 (same).

### e. Spread-of-hours pay

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours. 12 N.Y.C.R.R. § 142-2.4(a). Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." Id. § 142-2.18. "[T]he spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" Andrade, 2016 WL 3141567, at *4. An employee may recover spread-of-hours wages in addition to federal and state overtime wages. See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Antonio alleges that he regularly worked, but was not paid spread-of-hours pay for, shifts longer than ten hours. (ECF Nos. 18 ¶ 8; 49-5 ¶¶ 13–14, 16). In the Calculation, Antonio includes the number of shifts over ten hours that he worked. (ECF No. 49-6 at 2). Therefore, under New York law, Defendants are liable for the spread-of-hours wages they failed to pay Antonio for these dates. See Agureyev, 2021 WL 847977, at *3.

### f. Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'" Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)), adopted by 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016). "[W]here the employer shows

that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Glob. Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective

April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the statute that provides the greatest relief."  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted). The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  The NYLL therefore provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Antonio is entitled to liquidated damages equivalent to 100% of his unpaid wages.  See Schalaudek, 2017 WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted).

### g.  Statutory wage notices and statements

"The [WTPA], which became effective April 9, 2011, required [Defendants] to provide [Antonio], at the time of hiring, with a notice containing, inter alia, the rate and frequency of [his] pay, NYLL § 195(1), and to furnish [him] with a written statement with each payment of wages, listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked. NYLL § 195(3)."  Mondragon, 2019 WL 2551536, at *12.

Antonio alleges that Defendants failed to provide him with a wage notice at the time of his hiring, and that they failed to furnish correct weekly wage statements, such that he is entitled to statutory penalties. (ECF Nos. 18 ¶¶ 64–67; 49-5 ¶¶ 33–37). Defendants are again deemed to have admitted these allegations by their default, and therefore, the Court finds that Antonio is entitled to recover statutory damages under §§ 195(1) and 195(3). See Suriel, 2022 WL 1750232, at *14.

*    *    *

In summary, the Court finds that the well-pleaded allegations in the FAC and Antonio's Declaration establish Defendants' liability for unpaid overtime wages, unpaid spread-of-hours wages, liquidated damages, and statutory wage notice and statement damages, but do not establish a claim for unpaid minimum Straight Time Wages.

### D. Damages Calculation

No party has requested a hearing on the issue of damages, and Defendants have not submitted any written materials. Therefore, the Court has conducted its inquest based solely on the materials in Antonio's Damages Submission. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Perez, 2019 WL 7403983, at *3; Fed. R. Civ. P. 55(b)(2).

### 1. Evidentiary Basis

The Court must also determine whether Antonio has provided sufficient evidence to support his claim for damages. Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys.,

Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  In his Damages Submission, Antonio filed his Affidavit attesting to the dates and circumstances of his employment.  (ECF No. 49-5).  Despite warnings, Defendants have not responded to the Default Order or the Damages Submission or provided any contrary evidence.  (ECF Nos. 59; 60).  The Court finds that Antonio has met his evidentiary burden of proving damages, and that an in-person hearing is unnecessary because his Damages Submission, combined with Defendants' admissions resulting from their default, constitute a sufficient basis from which to evaluate the fairness of his damages request.  Fustok, 873 F.2d at 40; see Boston Sci. Corp. v. New York Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (same).

### 2.  Overtime Wages

The Court calculates appropriate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours the employee worked each week."  Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015).  Having reviewed the Calculation, the Court agrees with the Calculation, and respectfully recommends that Antonio be awarded overtime wages in the amount below:

| Time Period | Weekly Pay | Antonio's Hourly Rate (Weekly Pay/40) | Applicable Overtime Rate (Antonio's Hourly Rate *1.5) | Unpaid Overtime Hours | Overtime Wages Awarded |
|---|---|---|---|---|---|
| 11/5/2015–12/31/2015 | $600 | $15 | $22.50 | 256 | $5,760.00 |
| 1/1/2016–11/15/2016 | $600 | $15 | $22.50 | 1472 | $33,120.00 |

| | | | | | |
|---|---|---|---|---|---|
| 11/16/2016–12/31/2016 | $600 | $15 | $22.50 | 192 | $4,320.00 |
| 1/1/2017–12/31/2017 | $600 | $15 | $22.50 | 1664 | $37,440.00 |
| 1/1/2018–10/31/2018 | $600 | $15 | $22.50 | 1376 | $30,960.00 |
| 11/1/2018–11/15/2018 | $700 | $17.50 | $26.25 | 64 | $1,680.00 |
| 11/16/2018–12/31/2018 | $700 | $17.50 | $26.25 | 84 | $2,205.00 |
| 1/1/2019–5/15/2019 | $700 | $17.50 | $26.25 | 266 | $6,982.50 |
| 5/16/2019–7/15/2019 | $700 | $17.50 | $26.25 | 288 | $7,560.00 |
| 7/16/2019–12/31/2019 | $900 | $22.50 | $33.75 | 768 | $25,920.00 |
| 1/1/2020–3/30/2020 | $900 | $22.50 | $33.75 | 416 | $14,040.00 |
| 5/1/2020–12/12/2020 | $600 | $15.00 | $22.50 | 352 | $7,920.00 |
| **TOTAL** | | | | | **$177,907.50** |

### 3.  **Spread-of-Hours Wages**

Spread-of-hours damages are calculated by multiplying the number of days an employee worked more than ten hours by "the basic minimum wage rate."  12 N.Y.C.R.R. § 142-2.4(a); see Agureyev, 2021 WL 847977, at *10.  As explained above, Antonio's Calculation used, without substantiation, the minimum wage rate for large employers in New York City; absent any allegation regarding the number of Defendants' employees, the Court uses the small employer minimum wage rate, and thus reaches a different calculation than Antonio.  (See § III.C.3.c, supra; compare ECF No. 49-6 at 2 with N.Y. Lab. L. § 652(1)(a)).

| Time Period | Spread-of-Hours Days Per Week | Weeks in Period | Applicable Minimum Wage | Spread-of-Hours Wages Awarded |
|---|---|---|---|---|
| 11/5/2015–12/31/2015 | 6 | 8 | $8.75 | $420.00 |
| 1/1/2016–11/15/2016 | 6 | 46 | $9.00 | $2,484.00 |
| 11/16/2016–12/31/2016 | 6 | 6 | $9.00 | $324.00 |
| 1/1/2017–12/31/2017 | 6 | 52 | $10.50 | $3,276.00 |
| 1/1/2018–10/31/2018 | 6 | 43 | $12.00 | $3,096.00 |
| 11/1/2018–11/15/2018 | 6 | 2 | $12.00 | $144.00 |
| 11/16/2018–12/31/2018 | 0 | 6 | $12.00 | 0 |
| 1/1/2019–5/15/2019 | 0 | 19 | $13.50 | 0 |
| 5/16/2019–7/15/2019 | 6 | 9 | $13.50 | $729.00 |
| 7/16/2019–12/31/2019 | 6 | 24 | $13.50 | $1,944.00 |
| 1/1/2020–3/30/2020 | 6 | 13 | $15.00 | $1,170.00 |
| 5/1/2020–12/12/2020 | 0 | 32 | $15.00 | 0 |
| **TOTAL** | | | | **$13,587.00** |

### 4.  Liquidated Damages

Liquidated damages are calculated as the "one hundred percent of the total amount of wages found to be due . . ." NYLL § 198(1-a). Here, that is the sum of Antonio's unpaid overtime and spread-of-hours wages. See Agureyev, 2021 WL 847977, at *10. The Court respectfully recommends that Antonio be awarded liquidated damages in the amount below:

| Time Period | Overtime Wages Awarded | Spread-of-Hours Wages Awarded | Liquidated Damages |
|---|---|---|---|
| 11/5/2015–12/31/2015 | $5,760.00 | $420.00 | $6,180.00 |
| 1/1/2016–11/15/2016 | $33,120.00 | $2,484.00 | $35,604.00 |
| 11/16/2016–12/31/2016 | $4,320.00 | $324.00 | $4,644.00 |
| 1/1/2017–12/31/2017 | $37,440.00 | $3,276.00 | $40,716.00 |

| | | | |
|---|---|---|---|
| 1/1/2018–10/31/2018 | $30,960.00 | $3,096.00 | $34,056.00 |
| 11/1/2018–11/15/2018 | $1,680.00 | $144.00 | $1,824.00 |
| 11/16/2018–12/31/2018 | $2,205.00 | 0 | $2,205.00 |
| 1/1/2019–5/15/2019 | $6,982.50 | 0 | $6,982.50 |
| 5/16/2019–7/15/2019 | $7,560.00 | $729.00 | $8,289.00 |
| 7/16/2019–12/31/2019 | $25,920.00 | $1,944.00 | $27,864.00 |
| 1/1/2020–3/30/2020 | $14,040.00 | $1,170.00 | $15,210.00 |
| 5/1/2020–12/12/2020 | $7,920.00 | 0 | $7,920.00 |
| **TOTAL** | **$177,907.50** | **$13,587.00** | **$191,494.50** |

## 5. **WTPA Damages**

As set forth above, Antonio has shown that Defendants are liable for statutory damages under the WTPA. (See § III.C.3.g, supra). Violations of § 195(1) result in damages of $50 per workday, up to a maximum of $5,000, which is reached after 100 days. NYLL § 198(1-b). Violations of § 195(3) result in damages of $250 per workday, up to a maximum of $5,000, which is reached after 20 days. Because Defendants failed to provide Antonio the required written wage notices or statements for the duration of his employment, which lasted well over the period needed to reach the statutory maximum damages, the Court respectfully recommends awarding Antonio the maximum statutory damages of $5,000 for each claim, for a total of $10,000.00.

## 6. **Prejudgment Interest**

Antonio seeks prejudgment interest on his compensatory damages under the NYLL. (ECF Nos. 18 at 21; 49-6 at 2). Although prejudgment interest is not awarded where FLSA liquidated damages are awarded, "prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL." Morales v. MwBronx, Inc., No. 15 Civ. 6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."

Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012), adopted by, Order dated Aug. 9, 2012 (ECF No. 20).

Under New York law, prejudgment interest is awarded at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  For damages occurring "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001.  "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered."  Maldonado, 2012 WL 1663941, at *11.  The midpoint of a plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases.  See Suriel, 2022 WL 1750232, at *17; Mondragon, 2019 WL 2551536, at *11.

Antonio does not specify how he computed prejudgment interest.  (See ECF Nos. 49; 49-6).  The Court will employ the methodology in the cases cited above.  Antonio's employment lasted from November 5, 2015 until December 12, 2020—a total of 1834 days (excluding the 30 days in April 2020)—and the midpoint of his employment was May 10, 2018 (917 days after November 5, 2015).  Accordingly, the Court respectfully recommends an award of prejudgment interest calculated from May 10, 2018 through October 29, 2021, the date Antonio filed the Damages Submission.  See Suriel, 2022 WL 1750232, at *17 (using date of plaintiff's damages submission as the end point for calculating prejudgment interest); Reyes v. Café Cousina, 2019 WL 5722475, at *13 (same).  This amount is calculated as follows:

| Principal | Interest Calculation | Interest Amount |
|---|---|---|
| \$177,907.50+\$13,587.00 = \$191,494.50 | 3.47 years * \$191,494.50 * 0.09[4] | \$59,803.73 |

### 7. Post-judgment Interest

Antonio also seeks post-judgment interest. (ECF No. 18 at 21). The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961. The Second Circuit has explained that an award of post-judgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Suriel, 2022 WL 1750232, at *17 (awarding post-judgment interest). Given the mandatory nature of post-judgment interest, the Court respectfully recommends that Antonio be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### 8. Attorneys' Fees

Antonio seeks an award of attorneys' fees in the amount of \$7,702.50.[5] (ECF No. 49 ¶¶ 97–98). The NYLL permits a successful plaintiff to recover reasonable attorneys' fees. NYLL §§ 198, 663. "Whether an attorneys' fee award is reasonable is within the discretion of the court." De Jesus v. Sea Crest Diner-Rest., No. 17 Civ. 275 (ADS) (SIL), 2018 WL 3742778, at *11

---

[4] The period from May 10, 2018 through October 29, 2021 is 1268 days, or 3.47 years (1268/365).
[5] The Sojo Declaration states that this figure is the sum of attorneys' fees and costs, but the billing records reflect that this figure is solely the amount of requested attorneys' fees. (Compare ECF No. 49 ¶ 97 with ECF No. 49-7 at 3).

(E.D.N.Y. May 7, 2018) (citing De Jesus Galindo v. BLL Rest. Corp., No. 15 Civ. 5885 (HBP), 2018 WL 1684412, at *3 (S.D.N.Y. Apr. 6, 2018)).  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a reasonable hourly rate. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."   Simmons v. N.Y.C. Transit Auth. 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

### a.  Reasonable Hourly Rate

Antonio was represented by Michael Faillace, Esq. ("Faillace"), Catalino Sojo ("Sojo"), and a paralegal at the firm of Michael Faillace & Associates, P.C. (the "Firm").  (ECF Nos. 49 ¶ 100; 49-7).  Faillace recorded his time at a rate of $450.00 per hour, Sojo at $350.00 per hour, and the paralegal at $100.00 per hour.  (ECF Nos. 49 ¶ 100; 49-7).

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." Galeana v. Lemongrass on Broadway, Corp., 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability' of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300.00 to $400.00 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ. 05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

As to Faillace, Antonio touts his qualifications and experience in support of a billing rate of $450.00.  (ECF No. 49 ¶ 100(i)).  Antonio's Damages submission does not, however, reflect Faillace's subsequent suspension

> from practice for two years by the Grievance Committee of the Southern District of New York on November 9, 2021, as a result of repeatedly taking fees from settlements in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries); refusing to follow client directions as to the amounts they wanted to settle the case; and of misrepresenting facts relating to these practices to the Southern District Committee.

Garcia Lazaro v. Best Fish Mkt. Corp., No. 21-cv-5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 29, 2022).  Faillace moved to withdraw as counsel for Antonio, which Judge Schofield initially denied without prejudice, but ultimately granted, after Faillace confirmed that he was not asserting a charging lien against Antonio's recovery.  (ECF Nos. 53–56).  The Firm has now been reconstituted, at the same address, as "CSM Legal P.C.," the initials of which may be reflective of

Sojo's prominent role in representing the Firm's former clients.  See Garcia Lazaro, 2022 WL 280768, at *2 (recognizing reconstitution of firm using initials of current attorneys).

Faillace only billed 2.4 hours to Antonio's matter, the last of which was in February 2021, at the time the Complaint was being drafted.  (ECF No. 49-7 at 1).  The Second Circuit has instructed that, when determining the reasonableness of a claimed hourly rate, a court should consider "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008).  The Court agrees with Judge Cogan's conclusion that "[f]ew 'reasonable, paying clients' are going to retain an attorney who is going to be suspended for, among other things, stealing settlements from clients." Garcia Lazaro, 2022 WL 280768, at *3. In light of Faillace's suspension, the Court finds that any recovery for his time spent on Antonio's case would not be reasonable.  Accordingly, the Court respectfully recommends that the award of attorneys' fees exclude any amount with respect to Faillace.

Sojo has been practicing law for less than five years.  (ECF No. 49 ¶ 100(ii)).  Given this level of experience, other courts in this District have recently awarded her a rate of $225.  See Tarax v. Blossom West Inc., No. 19 Civ. 6228 (JSR), 2022 WL 2132749, at *2 (S.D.N.Y. June 14, 2022) (reducing Sojo's hourly rate from $350 to $225); Espinoza v. B'way Pizza & Rest. Corp., No. 17 Civ. 7995 (RA) (KHP), 2021 WL 7903991, at *12 (S.D.N.Y. Nov. 18, 2021) (same), adopted by, 2022 WL 977068 (Mar. 31, 2022).  Accordingly, the Court recommends that Sojo be awarded a rate of $225.00 per hour, which is consistent with her level of experience and rates awarded in this District.

For paralegals, hourly rates of $100.00 to $150.00 are typical for awards in this District. See Inga, 2021 WL 3624666, at *14 (collecting cases). Accordingly, the Court finds that the requested hourly rate of $100.00 is reasonable.

### b. Reasonable Hours Expended

Sojo expended 17.6 hours and the paralegal expended 3.7 hours on Antonio's case. (ECF No. 49-7). To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434 (1983)).

The Court has examined the contemporaneous billing records for Antonio's case, including the hours expended, dates of work, and brief descriptions of the work Sojo and the paralegal performed. (ECF No. 49-7). The Court finds that the hours they each expended were reasonable and not "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434.

Accordingly, the Court respectfully recommends that Antonio be awarded attorneys' fees in the amount below:

| Timekeeper | Requested Rate | Awarded Rate | Reasonable Hours | Fees Awarded |
|------------|----------------|--------------|------------------|--------------|
| Sojo | $350.00 | $225.00 | 17.6 | $3,960.00 |
| Paralegal | $100.00 | $100.00 | 3.7 | $370.00 |
| **TOTAL** | | | | **$4,330.00** |

### 9. Costs

Antonio requests costs in the amount of $552.00 comprised of the court filing fee ($402.00) and service costs ($150.00). (ECF Nos. 49 ¶ 98; 49-7 at 3). An employee who prevails in a wage-and-hour action is entitled to recover costs. See 29 U.S.C. § 216(b); NYLL § 663(1). Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted). In support of his requests for costs, however, Antonio has only submitted the Firm's billing record, which contains line items for the court filing fee and service costs, but did not "submit invoices or receipts to substantiate the claimed amount[s]." Khotovitskaya v. Shimunov, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9, 2021) (denying costs where party failed to submit documentation substantiating the amounts reflected in attorney billing records); see Suriel, 2022 WL 1750232, at *18 (declining to award costs for unsubstantiated amounts listed only in attorney billing record); Sanchez, 2018 WL 4502008, at *17 (noting that adequate substantiation is required for award of costs). The Court may, however, take judicial notice of the filing fee reflected on the docket as support for an award of that cost. (ECF No. 1). See Inga, 2021 WL 3624666, at *15 (collecting cases). Accordingly, the Court respectfully recommends that Antonio be awarded costs only in the amount of $402.00.

**IV.CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that Antonio be awarded:

(1)  $392,989.00 in damages against Defendants, comprised of: (i) $177,907.50 in unpaid overtime wages; (ii) $13,587.00 in spread-of-hours damages (iii) $191,494.50 in liquidated damages; and (iv) $10,000.00 in statutory damages;

(2)  $59,803.73 in pre-judgment interest;

(3)  post-judgment interest pursuant to 28 U.S.C. § 1961;

(4)  attorneys' fees in the amount of $4,330.00; and

(5)  costs in the amount of $402.00

Antonio shall promptly serve a copy of this Report and Recommendation on Defendants and file proof of service on the docket by **August 2, 2022**.

Dated:        New York, New York
              July 28, 2022

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Schofield.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).